WILLIAM M. MCDONALD V. STATE.

No. 26,334. April 8, 1953.
Rehearing Denied June 3, 1953.
Appellant's Second Motion for Rehearing Denied (Without Written Opinion) June 27, 1953.

*Conrad E. Smith, Tom Sanders,* and *Phil J. Montalbo,* Houston, for appellant.

*William H. Scott,* Criminal District Attorney, *King C. Haynie,* Assistant Criminal District Attorney, Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The offense is murder; the punishment, 15 years in the penitentiary.

Deceased and his wife went to the small beer tavern operated by appellant, and at the time of and just prior to the difficulty each was drinking a bottle of beer. Deceased played with appellant's dog, which was in the tavern, by bouncing a ball for the dog to retrieve. Appellant appears to have objected to his playing with the dog, saying that "everybody that comes in here works that bulldog to death." There was also a parrot in the room. Deceased asked that the appellant wake the parrot up, so that the wife of deceased could hear it talk. Whereupon, appellant said to deceased, "Johnnie, you are crazy, I am going to get my gun and kill you," and walked behind the bar and got a pistol, which he placed in his belt. Appellant then walked up to the deceased and his wife, at which time deceased said to him, "Slim, I am not scared of you and your pistol—we have been friends for years."

A witness testified that this statement on the part of deceased seemed to infuriate appellant; that he thereupon struck deceased upon the left side of the head with the pistol; and that the pistol fired, the bullet therefrom passing through the head of deceased and emerging on the right side of his head.

This is the state's case. The appellant did not testify. All the witnesses testified that appellant at the time was very drunk and had been some time prior to the homicide.

The parties were good friends. There is no testimony showing antecedent grudges, hatred, or ill-will on the part of appellant towards the deceased which would suggest a motive for the killing. In fact, the killing may be termed as unexplained.

The case was submitted to the jury upon the law of murder, with and without malice, and aggravated assault. The defense of accidental killing and of temporary insanity from the use of ardent spirits was also submitted.

The sole question presented is the contention that, under the facts stated, the jury was not authorized to conclude that appellant was guilty of murder with malice. Appellant, in support of that contention, urges the lack of any evidence of malice or of an intent to kill.

An intent to kill is not always essential to murder. Whiteside v. State, 115 Tex. Cr. R. 274, 29 S. W. 2d 399. The intent to kill may be inferred from the instrument and the mode and manner of its use. Phillips v. State, 152 Tex. Cr. R. 612, 216 S. W. 2d 213.

In the case of Banks v. State, 85 Tex. Cr. R. 165, 211 S. W. 217, 5 A. L. R. 600, and approved in Cockrell v. State, 135 Tex. Cr. R. 218, 117 S. W. 2d 1105, the rule stated is that the intentional doing of any wrongful act in such manner and under such circumstances as that the death of a human being may result therefrom is malice.

Such was the rule under our murder statute when that offense consisted of degrees—that is, murder in the first and second degrees. As pointed out in the Cockrell case, such rule is applicable under our present murder statute.

Here, appellant voluntarily and intentionally struck the deceased upon the head with a loaded pistol. This was the intentional doing of the unlawful act mentioned in the rule stated. That the death of the deceased may have resulted from that intentional act, by a firing of the pistol, is a reasonable and proper deduction for the jury to make and to conclude thereby that the killing was actuated by malice.

We are unable to agree with the appellant that the facts do not warrant a conviction for murder with malice.

The judgment is affirmed.

Opinion approved by the court.

ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant has filed a vigorous motion for rehearing herein expressing his dissatisfaction with the original opinion in this cause.

We think that appellant in his motion has misconstrued the testimony relative to an accidental killing herein. The testimony shows a threat on the part of the appellant to kill the deceased. It further shows that appellant went behind the bar in his place of business and procured a pistol which was of the self-cocking variety and which, according to witnesses, took approximately a five-pound pull on the trigger to first cock the same and then a continued pull on the trigger to fire it. It is also shown by expert witnesses that the pistol could not be fired by striking with it, unless the trigger had been pulled with that amount of pressure. It is further shown by witnesses, some leaving a basis for the inference on the part of the jury, that the striking was first had with the pistol, and immediately thereafter it was fired once which cost the deceased his life. From the testimony we quote:

"Q. After the defendant hit your husband, what happened then? A. An instant later I heard the report of the gun.

"Q. An instant—how soon after he brought the gun down on the side of your husband's head did you hear the discharge of the gun? A. It seemed almost seconds; almost simultaneously with the blow on his head with the gun.

"Q. What happened then? A. My husband fell to the floor,***."

It was shown by the doctor who removed the bullet from the deceased's head that it entered from the left side thereof just above the ear and went straight into his head and ranged slightly downward.

Relative to the theory of an accidental killing offered by the appellant, such was only a matter of inference. Appellant did not take the stand, and no witness testified that this was an accidental shooting. The court, in an excess of caution, charged more than once relative to an accidental killing, and in each instance left the jury to find whether such occurred or not, and instructed that if they had a reasonable doubt thereof as to its accidental character, then they should acquit the appellant.

It was shown by the testimony that appellant was drinking heavily and that the deceased seems to have done something which angered him; that he went back of the bar, possessed himself of his pistol, came back, walked up to where the deceased and his wife were sitting and had a conversation with the deceased. Speaking to the deceased, the appellant said: "I am going to get my gun and kill you." He then struck deceased over the head with the pistol. The fatal shot was fired straight into the head.

The question of an accidental shooting, if raised by the evidence, was nevertheless decided against appellant by the jury, and we think such decision finds support in the testimony.

Appellant attempts to have this case determined upon the proven fact that this death was caused by an accidental shot and that the use of this pistol as a bludgeon was the cause of the shot being fired through the head of the deceased. We do not agree that the facts must be so construed. They are also subject to a fair construction that appellant pointed this pistol at the head of the deceased and fired the shot straight through his head. Evidently such a theory was utilized by the jury, and we see no reason to disturb such finding.

The motion for a rehearing is overruled.