IN THE COURT OF
CRIMINAL APPEALS

OF TEXAS



 

NO. AP-75,151

 



 

Ex parte ROBERT LEE THOMPSON,
Applicant

 

 



ON APPLICATION FOR A WRIT OF HABEAS
CORPUS

IN THE 351ST DISTRICT
COURT

OF HARRIS COUNTY



 

 

Keller,
P.J., filed
a concurring opinion.

 

 

 

Applicant argues:

[I]t is the intent of the killer which determines
whether the offense is a capital murder or a felony-murder.  If the actual
killer intended the death, it is a capital murder.  If he did not, it was not
capital murder.[1]

 








The Court says that applicant is wrong, and that it
is applicant=s intent, not the intent of the primary actor, that
determines whether applicant is guilty of capital murder or felony murder under
the law of parties.[2] 
I think the Court is mistaken in this.  

                                                                 A.
The Statute

'7.02 provides: 

(a) A person is criminally responsible for an
offense committed by the conduct of another if:

 

(1) acting with the kind of culpability required for
the offense, he causes or aids an innocent or nonresponsible person to engage
in conduct prohibited by the definition of the offense;

 

(2) acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense;  or

 

(3) having a legal duty to prevent commission of the
offense and acting with intent to promote or assist its commission, he fails to
make a reasonable effort to prevent commission of the offense.

 

(b) If, in the attempt to carry out a conspiracy to
commit one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though
having no intent to commit it, if the offense was committed in furtherance
of the unlawful purpose and was one that should have been anticipated as a
result of the carrying out of the conspiracy.[3]

 

                                                         B.
Conspiracy Liability

 








Under Boykin v. State, we interpret a statute
in accordance with the plain meaning of its language unless the language is
ambiguous or the plain meaning would lead to absurd results that the
Legislature could not have possibly intended.[4] 
'7.02(b) unambiguously imposes vicarious liability on
all members of a conspiracy for the crime committed by one of its members, if
certain conditions are met.  Conspirators who did not personally commit the offense
are rendered liable for Athe felony actually committed@ by the primary actor if the offense was in furtherance of the
conspiracy and should have been anticipated, even if they had no intent to
commit that crime.  The focus of liability is on the crime the primary actor
committed (and thus, on his culpable mental state) which is then imputed to the
other conspirators.

In the Afactual innocence@ section, the
Court suggests that a jury could have convicted applicant of capital murder
under the conspiracy theory of parties, regardless of Butler=s intent:  

If the jury found that applicant and Sammy Butler
conspired to commit an aggravated robbery, and either one of them shot and
killed Mr. Rahim (intentionally or unintentionally), either or both of
them may be convicted of capital murder if Mr. Rahim was killed in the furtherance
of the aggravated robbery and his murder was one that should have been
anticipated as a part of this aggravated robbery.[5]

 

But, as discussed above, '7.02(b) imposes liability  on non-triggerman conspirators for the Afelony actually committed.@  If Butler killed the victim and that killing was
an accident, then the Afelony actually committed@ would be felony murder, and applicant, as a conspirator, would be
guilty of that felony.  This paragraph also seems to dispense entirely
with the culpable mental state required for capital murder.  But someone must
commit the capital murder, which, under the theory alleged in this case, is an
intentional murder.   








I also disagree with the Court=s treatment of the ineffective assistance claim.   In addressing
applicant=s contention that there was some evidence that
Butler did not intend to kill, the Court holds that this evidence was
irrelevant to whether applicant was entitled to an instruction on the
lesser-included offense of felony murder because the evidence did not
demonstrate that applicant lacked the intent to kill, and according to
the Court, applicant=s intent to kill is what matters under the law of
parties.  With regard to conspiracy liability, I think this position is
incorrect.  Butler=s intent is of paramount importance in determining
the Afelony actually committed,@ that is to be imputed to applicant under '7.02(b). In fact, '7.02(b) expressly makes the non-triggerman=s intent irrelevant.   

                                                         C.
Accomplice Liability

The wording of '7.02(a)(2) strongly suggests that it also is a
vicarious liability provision: imposing on an accomplice liability for the
crime committed by the primary actor.  Under '7.02(a)(2),
the accomplice, with the requisite intent, assists the primary actor Ato commit the offense.@  This language seems to assume that the primary
actor does in fact commit the offense.  A similar approach is taken in '7.02(a)(3), which extends liability to someone with a duty to act who
fails to prevent the Acommission of the offense.@  By contrast, '7.02(a)(1), involving liability for an innocent
person=s conduct, includes special language to establish
that the accomplice can be guilty of an offense for which the principal is
not.  Instead of referring to commission of the offense, that provision refers
to Aconduct prohibited by the definition of the offense@ and explicitly requires that the defendant act Awith the kind of culpability required for the offense.@ 








 The Court is correct to say that for applicant to
be convicted of capital murder as a party under '7.02(a)(2),
he must have the requisite culpable mental state for capital murder,[6]
but as discussed above, the language of that provision suggests that the
primary actor must also have the requisite culpable mental state for the
charged offense.  The Court cites a passage from Professor LaFave=s treatise to suggest otherwise, indicating in a homicide example that
accomplices with lesser or greater culpable mental states than the primary
actor could be convicted of lesser or greater offenses.[7] 
But application of the reasoning in this passage to Texas law is problematic. 
Professor LaFave acknowledges that his comments are Anot in all respects applicable in every jurisdiction@ because of subtle differences among jurisdictions in the formulation
of the Aintent to promote or assist@ standard.[8] 
With regard to lesser-included offenses, Professor LaFave=s statements might be given effect under the plain meaning of '7.02(a)(2): because guilt of an offense necessarily entails guilt of
all lesser-included offenses, an accomplice with a lesser culpable mental state
than the primary actor could still be said to be in the shoes of the primary
actor, but only as to the lesser culpable mental state, and so, to a
lesser-included offense required by that mental state.  But using '7.02(a)(2) to find an accomplice guilty of a greater offense than the
principal could have committed seems questionable under the statutory language.[9]

The Court quotes two excerpts from Salinas v.
State[10]
for the proposition that only applicant=s intent matters under the law of parties in
determining whether the lesser-included offense of felony murder is raised by
the evidence.  I think that despite the language in Salinas, the case
does not stand for that proposition.  This is the entire passage:

The critical question is whether the evidence showed
that appellant (as a principal or








a party) had the intent only to rob or to kidnap,
and he did not have the intent to kill. See Santana v. State, 714 S.W.2d 1,
9 (Tex. Crim. App. 1986). Dragging Morales from the car and shooting him in the
head with a shotgun at close range were not merely acts clearly dangerous to
human life that resulted in a death. Likewise, placing Leslie Ann, a 21‑month‑old
child, strapped into her car seat, in tall grass fifteen feet from a road and
outside of town, was not merely an act clearly dangerous to human life.
Whether appellant was the actual actor or  criminally responsible for the acts
of his cohorts by virtue of the law of parties, the evidence shows not only an
intent to commit robbery or a lesser included offense, but also the intent to
kill.[11]

 

The italicized material shows that what was critical
in  Salinas was the primary actor=s intent.  Moreover, the citation to Santana
is worth noting, as it is an apparent reference to the following paragraph:

The evidence shows that the deceased was shot as he
walked from the Purolator van towards the main entrance of the Sage store.
Witnesses testified that the only warning given to the deceased was that he
should halt or else he would be shot. The witnesses testified that immediately
after they heard this warning, two shots were fired, one of which struck and
killed the deceased. Evidence also showed that although the deceased was
wearing a gun, his holster snap had never been unfastened. We find that the
evidence raised only a cold‑blooded, unprovoked killing. The shooter,
whoever he was, gave no opportunity whatsoever for the deceased to cooperate in
any way. Clearly, he fired his gun at the deceased with only one intent ‑‑
the intent to kill. Whether the deceased (sic) was the actual shooter or
criminally responsible for the acts of the shooter by virtue of the law of
parties, we find the evidence shows not only the intent to commit robbery, but
also the intent to kill. Thus we find that the evidence did not raise the
issue of felony murder.[12]

 

Thus, Santana likewise suggests that an
accomplice=s entitlement to a lesser-included offense
instruction turns upon the evidence of the primary actor=s
culpable mental state.

With regard to the lesser-included offense, the
Court also says:

But submission of felony-murder is not warranted
unless there is evidence that shows:

 








(1)       for the purpose of party liability under
Section 7.02(a)(2), applicant himself did not intend the death of Mr. Rahim or
another;

 

(2)       for purposes of conspiracy liability under
Section 7.02(b), Butler=s act of shooting Mr. Rahim was not committed in the
furtherance of a conspiracy; or

 

(3)       for purposes of conspiracy liability under
Section 7.02(b), applicant should not have anticipated that Butler would shoot
Mr. Rahim.[13]

 

As discussed above, submission of felony-murder
would be supported by evidence raising a fourth option: that Butler committed
only felony murder, which could then be imputed to applicant under the law of
parties.     

And it seems to me that the Court=s three-point listing is problematic for a couple of other reasons.  My
first difficulty is with the use of the disjunctive Aor.@  I think that evidence negating liability for
capital murder under '7.02(a)(2) would not entitle a defendant to an
instruction on the lesser offense unless there were also evidence negating
liability under '7.02(b).  Each independent theory of party liability
must be accounted for in raising the lesser-included offense.








But there may be a more serious problem: it is
questionable whether all three of the conditions, taken together, could ever
raise a lesser- included offense of felony murder.  As discussed earlier,
Professor LaFave suggested that an accomplice could be deemed guilty of a
lesser-included offense under Aintent to promote or assist@ liability, i.e. '7.02(a)(2), if the accomplice had a lesser culpable
mental state than the principal had.  This type of reasoning obviously does not
work for conspiracy liability, under '7.02(b), because that legal theory necessarily
assumes that the co-conspirators do not have the primary actor=s greater culpable mental state.  So when both of these party liability
theories are in play, in order to be entitled to a felony murder instruction
the defendant would have to provide evidence that demonstrated a lesser
culpable mental state giving rise to a lesser offense under '7.02(a)(2) and the defendant would have to provide evidence that
entirely negated the applicability of '7.02(b).  

But it is questionable whether an accomplice=s lesser culpable mental state under '7.02(a)(2)
could ever raise felony murder as a lesser-included offense.  Felony murder
attaches no culpable mental state to the killing itself, but '7.02(a)(2) requires that the defendant have the Aintent to promote or assist@ the commission of the offense.  If applicant lacked
the intent to kill, and merely intended to commit the underlying felony, then
it would seem that the only felony applicant intended to promote or assist
would be the underlying felony.  A prior decision applying '7.02(a)(2) to manslaughter may suggest a more expansive reading of the
statute,[14]
but it remains to be seen whether the reading would be expansive enough to
infer an Aintent to promote or assist@ for a result-of-conduct offense, where a culpable mental state for the
result is completely absent.

                                       D.  Alternative
Grounds for Denying Relief    

In spite of the above, the Court nevertheless
reaches the correct result.  The Court correctly observes that '7.03 makes acquittal of the principal irrelevant to whether the
accomplice can be convicted under the law of parties.[15] 
All that is required is that the evidence at applicant=s trial
support the proposition that the principal committed the offense charged.  The
Court correctly observes that the prosecution introduced a substantial amount
of evidence at applicant=s trial that Butler intentionally killed the victim
and, thus, committed capital murder. 








I also agree with the Court that the failure to
request the lesser-included offense of felony murder was part of a valid trial
strategy of pursuing the lesser-included offense of aggravated robbery,
although my reasoning differs somewhat from the Court=s.  On the one hand, because liability for capital murder (as opposed
to felony murder) under the law of parties could have turned upon Butler=s intent, pursuing the lesser-included offense of felony murder would
not have required applicant to place his own intent in issue, and thus, would
not have increased his exposure to the introduction of extraneous offenses. 
But on the other hand, advocating both lesser-included offenses might have
fragmented the defense of the case in the eyes of the jury, and counsel could
have validly concluded that limiting their efforts to one lesser offense would
result in a stronger presentation.  I agree with the Court that the argument
that Butler=s actions were unforeseeable was at least as strong,
if not stronger, than the argument that Butler did not intend to kill the
victim, and the former strategy had the benefit of continuity with the defense
position on the anti-parties special issue.  While the Court takes applicant at
his word that aggravated robbery was not raised by the evidence, I am not
convinced of such, and more importantly, applicant=s trial attorneys could have reasonably believed that the evidence was
sufficient to support the instruction.  The trial court apparently agreed,
since aggravated robbery was submitted as a lesser-included offense in the jury
charge.

For these reasons, I concur in the Court=s judgment.

KELLER, Presiding Judge

Date
filed: November 9, 2005

Publish









[1] 
Court=s op. at 5.





[2] 
Id. at 17.





[3] 
Tex. Pen. Code '7.02 (emphasis added). All
references to sections are to the Texas Penal Code unless otherwise indicated.





[4] 
818 S.W.2d 782, 785 (Tex. Crim. App. 1991).





[5] 
Court=s op. at 6
(emphasis added).





[6] 
See Court=s op.
at 6.





[7] 
See Court=s op.
at 9 (quoting 2 Wayne R. LaFave,
Substantive Criminal Law '13.2(c)
at 346-347 (2d ed. 2003).





[8] 
LaFave, '13.2(b) at 344,





[9] 
While Professor LaFave gave numerous examples
of lesser-included offenses, he cites only one example of a greater
offense that he believed could be imposed on an accomplice: murder, where the
principal could be guilty only of voluntary manslaughter.  Under Texas law,
that example is no longer of concern, as the voluntary manslaughter offense has
been eliminated, and the Asudden passion@ issue that distinguished voluntary manslaughter
from murder has been incorporated as a punishment issue in the murder statute. 
See Tex. Pen. Code '19.02(d).





[10] 
163 S.W.3d 734 (Tex. Crim. App. 2005).





[11] 
Id. at 742 (italics added).





[12] 
714 S.W.2d at 9.





[13] 
Court=s op. at 16
(emphasis added).





[14] 
Mendez v. State, 575 S.W.2d 36 (Tex. Crim. App. 1979)(intent to assist
reckless act).





[15] 
Court=s op. at 6-7,
10-11.